## S94A1366. OWEN v. THE STATE.
(453 SE2d 728)

SEARS, Justice.

Jeffrey Cordell Owen was convicted in Cobb County Superior Court of the malice murder of Ted Stamm and of possession with intent to distribute more than one ounce of marijuana.[1] He was sen-

---

[1] The crimes were committed on April 15, 1987. Owen was indicted on October 19, 1989, tried from May 30 to June 8, 1990, and found guilty and sentenced on June 8, 1990. Owen filed a motion for new trial on July 6, 1990. The transcript was certified by the court reporter on October 19, 1990. Owen filed a first amended motion for new trial on June 30, 1991, and a second amended motion for new trial and a motion for an evidentiary hearing on August 2, 1991. Owen's motion for new trial was denied on November 25, 1991. Owen filed his notice of appeal on December 26, 1991, an amended notice of appeal on January 8, 1992, a corrected amended notice of appeal on January 21, 1992, and a second amended notice of appeal on March 4, 1992. The appeal was docketed in this Court on March 31, 1993. The State filed a motion for remand of the case to the trial court for supplementation of the record. As the appellant's counsel consented to the remand, we remanded to the trial court on June 19, 1993. An evidentiary hearing was set for September 9, 1993. The state, however, withdrew its motion to supplement the record, and no hearing was held. On May 27, 1994, the trial court signed an order transmitting the record of Owen's case back to this Court for hearing on appeal. The appeal was re-docketed in this Court on June 7, 1994, and oral arguments were

tenced to life imprisonment on the malice murder conviction and ten years imprisonment on the possession with intent to distribute, to be served concurrently with the life sentence on the murder conviction. For the reasons that follow, we affirm.

1. When considered in the light most favorable to the verdict, we find that the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that Owen shot Stamm to gain possession of about 100 pounds of marijuana. We thus conclude that the evidence is sufficient to support Owen's convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Before the trial Owen filed several motions with the state requesting the disclosure of any agreements, deals, considerations, promises, or expectations of leniency between any state's witness, including Joe Tays and Robin Tays, and any state's agent, including the District Attorney's office, the Cobb County Police Department, the GBI, and any other law enforcement agency involved in the investigation, that might affect the credibility of any particular witness. In his third enumeration of error, Owen contends that the trial court erred in denying his motion for a new trial due to the failure of the prosecution to disclose audiotapes that he alleges contain evidence of plea arrangements and grants of immunity to Joe and Robin Tays. The state, on the other hand, responds that the taped conversations do not reveal that the detective made a deal with the Tayses, and that even if the detective did so, the failure to reveal the deal does not amount to reversible error.

> The state is under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness, and a "failure to disclose such an agreement constitutes a violation of the due process requirements of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972)." *Owens v. State*, 251 Ga. 313 (1) (305 SE2d 102) (1983).

*Jolley v. State*, 254 Ga. 624 (331 SE2d 516) (1985). Moreover, "[i]mpeachment evidence showing bias or interest on the part of a key prosecution witness falls within the *Brady* rule." *Belins v. State*, 210 Ga. App. 259, 261 (435 SE2d 675) (1993). Accord *Giglio v. United States*, supra at 154; *Patillo v. State*, 258 Ga. 255, 260 (368 SE2d 493) (1988).

Our review of the tapes reveals that Joe and Robin Tays both expressed reluctance to testify that nearly 100 pounds of marijuana

heard on October 11, 1994.

had been stored in their garage without some assurance that they would not be prosecuted in either Gwinnett County, where they lived, or in Cobb County. The audiotape shows that Officer Hunton of the Cobb County Police Department told Joe Tays that

> we've reached an agreement with your attorney, even if you don't use this attorney in the future, this attorney, you know, we've reached an agreement with him. There is no way, absolutely no way, that we could prosecute you for anything to do with this dope. Now, if I wanted to, I couldn't do it, irregardless of whether a letter is written or not, there is no way that I could do it or anybody else could do it, in Gwinnett County, in Cobb County, the GBI, the FBI, can't do it. That has been taken care of.

Officer Hunton made similar statements to Robin Tays in response to her statement that she needed an agreement not to be prosecuted before she spoke to him.

We conclude that the audiotape conversations with Officer Hunton and Joe and Robin Tays reveal the type of information that is required to be disclosed under *Giglio* and *Brady*, as evidence of this understanding between Officer Hunton and the Tayses would be relevant to their credibility.[2] See *Patillo*, 258 Ga. at 260.

> However, a failure to disclose does not "automatically require a new trial. . . ." *Giglio*, supra, 405 U. S. at 154. Rather, reversal is required "only if the [undisclosed] evi-

---

[2] The state does not contend that, because the audiotapes were not in the prosecutor's file but were in a police officer's file, the audiotapes were not in possession of the state for purposes of *Brady*. In this regard, this Court has recently held that *Brady*

> requires information to be revealed . . . when it is "possessed by the prosecutor or anyone over whom the prosecutor has authority." *Meros*, 866 F2d [1304, 1309 (11th Cir. 1989), cert. denied 493 U. S. 932 (1989)]. We will analyze whether a person is on the prosecution team on a case-by-case basis, reviewing the extent of interaction, cooperation, and dependence of the agents working on the case.

*Zant v. Moon*, 264 Ga. 93, 100 (440 SE2d 657) (1994). In the present case, Officer Hunton worked in the Crimes Against Persons Unit of the Cobb County Police Department and was designated the case agent or lead agent for the investigation of Stamm's death. The record demonstrates that he was an integral part of the prosecution team. Evidence within Officer Hunton's possession thus should be considered within the possession of the state for purposes of *Brady*. *Zant v. Moon*, 264 Ga. at 100. Compare *Massengale v. State*, 189 Ga. App. 877, 881 (377 SE2d 882) (1989) ("[i]n the absence of a clear showing that . . . information was wilfully and intentionally concealed from the defense, we [the Court of Appeals] are inclined *not to impute* to the prosecutor knowledge possessed by local police and probation authorities"); *Castell v. State*, 250 Ga. 776, 782, n. 6 (301 SE2d 234) (1983) ("[w]e cannot necessarily impute to the prosecutor knowledge possessed by a police officer"). Of course, the statements of the Tayses would now be discoverable under our new criminal discovery statutes. See OCGA § 17-16-1 (1), (2) (effective as of January 1, 1995); OCGA § 17-16-7 (effective as of January 1, 1995).

dence is material in the sense that its suppression undermines confidence in the outcome of the trial, i.e., "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, [473 U. S. 667, 682] (105 SC 3375, 3381 and 3384, 87 LE2d 481) (1985).

*Patillo*, 258 Ga. at 261.

We find that reversal is not required. First, Owen contends that the most damaging aspect of the Tayses' testimony was that they specified definitively that he put the marijuana in their garage on April 15. However, the Tayses were in fact very equivocal about the date that Owen placed the marijuana in their garage, stating that it could have been April 13, 14, or 15. They stated that it was possible it was April 15, but that they could not be sure. Further, Officer Hunton's representation to the Tayses that they would not be prosecuted was not contingent on the Tayses testifying favorably to the government or on the government being satisfied with the result of the prosecution of Owen. See *Bagley*, 473 U. S. at 683 (the fact that the witnesses' stakes in the prosecution of Bagley were contingent on the government's satisfaction with the prosecution made evidence of the government's agreements with the witnesses critical to the jury's assessment of the witnesses' credibility). In addition, some of the Tayses' testimony, such as the fact that Joe Tays sold Owen a .22 caliber High Standard pistol the first week in April, was corroborated by other evidence. See *Patillo*, 258 Ga. at 261.[3]

For these reasons, we conclude that a new trial is not required by the failure to provide the defense the audiotapes in question.

3. We find no merit to Owen's other enumerations of error, in which he contends that the trial court erred in permitting the state to introduce certain hearsay statements of the victim and that the trial court erred by failing to grant him a new trial based on newly discovered evidence.

*Judgment affirmed. All the Justices concur.*

---

[3] The fact that Owen's trial was a bench trial raises an interesting issue, that we do not now undertake to resolve, regarding whether that factor could impact the materiality question when the trial court has also heard and denied a motion for new trial that alleges the *Brady* violation. Where a trial court is the original trier of fact and has the opportunity at a motion for new trial hearing to evaluate the impact of the information that the state failed to provide pursuant to *Brady*, the trial court can arguably resolve the materiality issue without the inherent "difficulty [present in a jury trial . . .] of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete [*Brady*] response." *Patterson v. Black*, 791 F2d 107, 110, n. 2 (8th Cir. 1986) (quoting *Bagley*, 473 U. S. at 683). Here, however, the trial court did not make a specific finding regarding the materiality issue in denying the motion for new trial.

DECIDED FEBRUARY 27, 1995.

*Spruell & Dubuc, Billy L. Spruell,* for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Kenneth T. Israel, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige M. Reese, Assistant Attorney General,* for appellee.