A99A0653. RAGLAND v. THE STATE.
(519 SE2d 757)

RUFFIN, Judge.

Larry Antoine Ragland was convicted of one count of selling cocaine and acquitted of a second count. On appeal, he argues that he is entitled to a new trial because the State failed to disclose an agreement between the State and a prosecution witness, as required by *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) and *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972). Because Ragland has not shown a reasonable probability that the outcome of the trial would have been different had the State disclosed the agreement, we affirm.

Under *Brady*, supra,

the State is required to disclose evidence favorable to the defendant when such evidence is material to guilt or punishment. This includes disclosure of impeachment evidence

which could be used to show bias or interest on the part of a key State witness. Accordingly, the [S]tate is under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness, and a failure to disclose such an agreement constitutes a violation of the due process requirements of *Brady*, supra. *Giglio*, supra. In order to show that the State violated *Brady* by failing to reveal a deal with one of its witnesses, a defendant must show that the State possessed evidence of the deal; that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; that the State suppressed evidence of the deal; and that, had the evidence of the deal been disclosed to the defendant, there existed a reasonable probability that the result at trial would have been different. *Burgeson v. State*, 267 Ga. 102, 104 (475 SE2d 580) (1996).

(Citations and punctuation omitted.) *Ferguson v. State*, 226 Ga. App. 681, 682-683 (487 SE2d 467) (1997). The burden is on the defendant to prove each of these elements. *Zant v. Moon*, 264 Ga. 93, 100 (440 SE2d 657) (1994).

Ragland was charged in two counts with selling cocaine on January 21, 1997 and July 8, 1997. With respect to the January 21 charge, Officer Edward Dalton of the City of Newnan Police Department testified that he sent a confidential informant, Glenn Rainey, to purchase crack cocaine from an individual known as Tony Ragland at a house at 70 Glenn Street in Newnan. Dalton gave Rainey three $10 bills to use in the purchase and saw Rainey enter and leave the house. After Rainey left the residence, he gave Dalton two $10 rocks of crack cocaine. Rainey testified at trial that he purchased the two rocks from Ragland, whom he knew as Tony Ragland. Rainey admitted that he had been arrested in December 1996 for possession of cocaine, and that the charges against him had been dismissed in exchange for his agreeing to act as a confidential informant. He stated that he probably would be in jail if he had not agreed to make drug buys for the police and agreed that he was motivated to help the police.

Officer Dalton also testified that on July 8, 1997, he sent another confidential informant, Michelle Thomas, along with Deputy Renee Jones, an undercover officer with the Upson County Sheriff's Department, to purchase drugs from Ragland at 70 Glenn Street. Jones testified that she and Thomas drove to the Glenn Street house. As they were sitting in their truck, Thomas asked a man to give her a "dime," and an individual went inside the house. Jones asked Thomas who the man was, and Thomas said it was Tony Ragland. A few minutes

later, the man came back outside, approached the passenger side window, and handed Thomas a rock of crack cocaine, and Thomas paid the man an undisclosed amount of money. Jones positively identified Ragland as the individual who sold them the cocaine, stating that she had a clear view of him during the transaction. Thomas also identified Ragland as the individual who sold her the drugs. She stated that she had known Ragland before the transaction, and that she knew him by the name Tony Ragland. Ragland's attorney did not ask Thomas on cross-examination whether she was testifying pursuant to any agreement with the State.

The truck Jones and Thomas were in was equipped with a videotape recorder which monitored the transaction, and a videotape of the transaction was introduced into evidence at trial. The videotape briefly showed the suspect's face and body as he was standing outside the passenger side window making the drug transaction. Officer Dalton testified that he knew Ragland and was positive that he was the individual on the video.

Ragland testified that he went by the name Larry Ragland, and that nobody called him Tony Ragland. He claimed that he had a cousin who was known as Tony Ragland, but said that his cousin refused to come to court. Ragland claimed that he was working at his uncle's repair shop at the time of the January 21 incident and was in Atlanta during the July 8 incident. He testified that he did not know Thomas or Rainey.

The jury acquitted Ragland of selling cocaine to Rainey on January 21, but found him guilty of selling cocaine to Thomas and Jones on July 8. After trial, Ragland learned that Thomas had testified pursuant to an agreement that certain charges against her for possession of cocaine would be dismissed upon her testifying in this and certain other cases. Although the prosecutor who tried this case was not aware of the agreement, other members of the district attorney's office, as well as Officer Dalton, were apparently aware of the agreement at the time of trial.

Ragland argues that, had he known of the State's agreement with Thomas, he could have used it to impeach her credibility at trial. He points to the fact that the jury acquitted him of selling cocaine to Rainey, who admitted that he was testifying pursuant to an agreement with the State that charges against him be dismissed. Since the jury was apparently inclined to discredit Rainey's testimony because of his agreement with the State, Ragland contends that it is substantially probable the jury also would have discredited Thomas's testimony had it known of her agreement.

However, there are substantial differences between the evidence implicating Ragland in the January 21 transaction and the evidence implicating him in the July 8 transaction. The only direct evidence of

Ragland's involvement in the January 21 transaction was the testimony of Rainey, who admitted that he knew Ragland was one of the targets of the State's investigation. The jury apparently concluded that, in light of Rainey's admitted interest in cooperating with the State, his testimony was not, by itself, sufficient to establish Ragland's guilt beyond a reasonable doubt.

With respect to the July 8 transaction, however, Thomas's testimony was not the only evidence of Ragland's guilt. Because the entire transaction was captured on videotape, the only question for the jury was whether Ragland was in fact the individual seen on the videotape. Although Thomas made an in-court identification of Ragland, this was not the only identification evidence presented. Deputy Jones, who was an eyewitness to and participant in the drug transaction, also positively identified Ragland at trial and testified that she was certain of her identification. In addition, Officer Howell testified that he knew Ragland and was certain that he was the individual on the tape. Moreover, the videotape itself briefly showed the man's face and body, and the jurors were able to compare the picture on the videotape to their own observation of Ragland at trial. Finally, the videotape served to corroborate Thomas's and Jones's account of the transaction, thus lending credibility to their testimony. Under all of these circumstances, it is unlikely that the jury's verdict would have been different if the jury had been aware of Thomas's agreement with the State. Because Ragland has not carried his burden of showing a reasonable probability of a different outcome, the trial court did not err in denying his motion for new trial. See *Bradley v. State*, 193 Ga. App. 515, 516 (2) (388 SE2d 331) (1989).[1]

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 24, 1999.

*James T. Barfield III*, for appellant.

*Peter J. Skandalakis, District Attorney, Hope F. Smelcer, Assistant District Attorney*, for appellee.

---

[1] In light of our ruling above, it is unnecessary to consider whether Ragland could have discovered Thomas's agreement with the State through the exercise of reasonable diligence (e.g., through cross-examination of Thomas).